**ALLSTATE INSURANCE COMPANY
and Wayne Watson, Petitioners,**

v.

**Ron DOOLEY, Respondent.**

No. S–13331.

Supreme Court of Alaska.

Nov. 12, 2010.

Peter J. Maassen, Ingaldson, Maassen & Fitzgerald, P.C., Anchorage, for Petitioners.

Danée L. Pontious and Ray R. Brown, Dillon & Findley, P.C., Anchorage, and Christian N. Bataille, Walther & Flanigan, Anchorage, for Respondent.

Before: CARPENETI, Chief Justice, EASTAUGH, FABE, WINFREE, and CHRISTEN, Justices.

*OPINION*

CHRISTEN, Justice.

## I. INTRODUCTION

Allstate Insurance Company (Allstate) and Wayne Watson, an Allstate attorney, seek review of an order denying their motion for partial summary judgment. Allstate and Watson argue that an action in tort for spoliation of evidence may only be maintained where evidence is permanently lost or destroyed, not when evidence is only concealed from the complaining party. We hold that the tort of fraudulent concealment of evidence, not spoliation, is the appropriate cause of action when evidence is intentionally concealed until after entry of judgment and expiration of the period allowed by Alaska Civil Rule 60(b) for seeking relief from a final judgment.

## II. FACTS AND PROCEEDINGS

On October 28, 2000, Ron Dooley was injured when he slipped and fell while working on an addition to William Paul's home in North Pole. Dooley was on the second floor, carrying a piece of lumber, when he slipped on ice or snow that had accumulated at the top of the stairway. Dooley could not recall what caused him to fall, but he fell down the stairs and landed on the concrete floor of the lower level. The stairs had no railings at the time.[1]

Paul was insured by Allstate Insurance Company. On November 10, 2000, Allstate sent independent insurance adjustor Larry Staiger to the accident scene. Staiger took photographs of the addition and stairwell and spoke with Paul about the condition of the area at the time of the accident. Staiger later made large copies of the photographs, mounted them on letter-sized sheets of paper, and made separate notes describing each photograph. Staiger also applied "stick-on" arrows to the photographs. The annotations to the photographs contained information about the condition of the accident site gleaned from Staiger's conversation with Paul. Most significantly, the notes suggest that Paul admitted that the area of floor where Dooley slipped was covered by ice at the time of the accident.[2]

Dooley sued Paul, alleging Paul's negligence caused the accident and seeking damages for his injuries. Allstate attorney Wayne Watson defended Paul in the suit. Watson produced Staiger's photographs to Dooley during the discovery phase of the case but he did not produce the annotations to the photographs or the stick-on arrows, under the mistaken belief that they were privileged. During his deposition, Paul made statements that appear to be inconsistent with Staiger's notes. Later, Watson realized that the photograph annotations and arrows were not privileged and produced them. He also agreed that Dooley's attorneys could re-depose Paul, at Allstate's expense.

Dooley sought permission to submit additional instructions on spoliation and "breach of duty of disclosure" shortly before trial. The superior court gave Dooley a choice

---

1. The wooden stairway had been constructed recently. Although it was apparently structurally sound, it had no railings and there was no carpet or other material covering the stairs.

2. Photograph seven shows ice on the floor at the top of the stairwell opening. An arrow on the photograph points to a location on the floor directly in front of the first step. The note states, in part, "[t]he fall occurred at the arrow. Some of the ice was removed by a hammer. The ice came from a few snow falls, prior to the roof cover being installed." Photograph eight also shows the stairwell opening from the second floor, but it is taken from a different angle and it shows some batt insulation on the floor. An arrow on the photograph points to the same spot as the arrow in photograph seven. This note states, in part, "Arrow is start of the fall. Note the ice build up to the left of the batt insulation. This was similar to the fall area prior to 'hammering' it."

between moving for a continuance or receiving an immediate ruling on the request for a spoliation instruction. Dooley chose a continuance. The court ultimately sanctioned Watson, ordering him to pay Dooley $12,200 for the discovery violation, and the parties proceeded with trial preparation.[3]

The case proceeded to trial after the photograph annotations and stick-on arrows were produced and Paul was re-deposed. Paul's negligence had been established in a pre-trial ruling, but the jury allocated 60% of the total fault to Paul and 40% to Dooley. The jury found that Dooley's total damages were $350,000; its decision to allocate 40% of the fault to Dooley reduced the principal amount of the judgment entered in his favor by $140,000.

Dooley then brought this suit against Watson and Allstate. He claimed that their delayed production of material evidence caused him to incur unnecessary litigation expenses by prolonging the litigation and reducing the value of his claim. Dooley's initial complaint did not identify a specific cause of action, but it alleged that Watson's concealment of the photograph annotations "was intentional, in reckless disregard of the plaintiff's rights, fraudulent and a breach of AS 21.36.125(a)(6) & (8)."[4]

During the discovery phase of this case, Dooley learned that Allstate claims adjuster Don Cook made an entry in his "claim diary" on January 16, 2001, after he interviewed Paul about the slip and fall accident (the "Cook note"). Watson had produced a redacted version of the claim diary before the trial in *Dooley v. Paul*, but the pages documenting Cook's January 16, 2001 interview with Paul had been removed from the claim diary entirely and had not been produced. Dooley amended his complaint against Watson and Allstate when he learned about the existence of the Cook note. The amended complaint makes three arguments for recovery of damages based on newly-discovered evidence: (1) spoliation of evidence; (2) abuse of process; and (3) fraud and misrepresentation.

Allstate and Watson sought partial summary judgment on Dooley's spoliation claim. Their motion argued that the tort of spoliation of evidence is permitted in Alaska only where evidence is permanently destroyed, or intentionally concealed until it is naturally destroyed, before it can be seen or used by the complaining party. Allstate and Watson argued that Dooley cannot maintain a spoliation claim regarding the Cook note because: (1) the note was not destroyed or irretrievably lost, and (2) deprivation of access to the note did not prejudice Dooley's personal injury suit. The superior court denied the summary judgment motion. The court's order reasoned:

> It makes no sense to limit spoliation to the permanent destruction of evidence, thus allowing the temporary concealment of evidence to be outside the parameters of the tort. The essence of the spoliation claim is that the items or information is destroyed as potential evidence, regardless of whether it is destroyed for all purposes or simply concealed long enough to make the evidence unavailable when it matters, whether prior to trial or at trial. The tort reflects the obligation of a party not to interfere with the truth finding function of litigation. If evidence is concealed, but not destroyed, until after trial, the fact finder is no less deprived of the evidence than if the evidence had been destroyed completely.

Allstate petitioned for review of the superior court's decision. We granted the petition for review under Alaska Appellate Rule

---

3. The amount of the sanction was calculated to compensate Dooley for the full amount of the additional attorney's fees he incurred as a result of the late-produced discovery.

4. AS 21.36.125 is Alaska's Unfair Claim Settlement Practices Act. AS 21.36.125(a) states: "A person may not commit any of the following acts or practices: ... (6) fail to attempt in good faith to make prompt and equitable settlement of claims in which liability is reasonably clear; ... (8) compel an insured or third-party claimant in a case in which liability is clear to litigate for recovery of an amount due under an insurance policy by offering an amount that does not have an objectively reasonable basis in law and fact and that has not been demonstrated in the insurer's file; ...."

402(b)(2).[5]

## III. STANDARD OF REVIEW

■ We review the denial of a motion for summary judgment de novo, and will reverse it if there are no material facts in dispute and the moving party was entitled to judgment as a matter of law.[6] In making this determination, "all inferences of fact will be drawn in favor of the non-moving party."[7]

## IV. DISCUSSION

■ We have made clear the importance of deciding cases on the merits whenever possible.[8] We have also held that where an individual acts to intentionally prevent another person from pursuing his or her civil cause of action by destroying evidence, there must be a remedy.[9] Intentional spoliation is "a tort borne of necessity," available as a cause of action only in those limited circumstances when evidence is destroyed and unavailable for trial and the damages caused by its destruction cannot be concretely determined.[10] Where evidence is intentionally concealed so that it is unavailable to a litigant pursuing a civil cause of action, our case law implies that there must be a remedy.[11] But where traditional discovery sanctions can sufficiently redress the harm caused by the wrongful withholding of evidence, those remedies are exclusive.[12] Only where such remedies are not available or are not sufficient is an independent cause of action available.[13]

■ We have recognized that fraud may be committed through the failure to disclose information in the presence of an affirmative duty to do so.[14] Fraudulent concealment of evidence is an outgrowth of the same principle and is the cause of action most consistent with our existing case law and civil rules. In our view, the tort of fraudulent concealment of evidence, not spoliation, is the appropriate remedy when evidence is concealed for so long that it is unavailable for trial and/or for a motion filed under Civil Rule 60(b).

### A. The Tort Of Intentional Spoliation In Alaska

We have not expressly defined the elements of the tort of spoliation in Alaska, but they can be gleaned from our case law and they illustrate important similarities and differences between the permanent destruction and temporary concealment of evidence. As discussed below, the first two elements gleaned from the case law militate in favor of affirming the trial court's ruling that intentional concealment satisfies the requirements for spoliation. The third element illustrates why a different remedy is required when evidence is concealed but not destroyed.

### 1. The tort of spoliation requires a showing of intentional interference with another party's civil cause of action.

The tort of spoliation was recognized by our court more than twenty years ago in *Hazen v. Municipality of Anchorage.*[15] Haz-

---

**5.** Alaska Appellate Rule 402(b)(2) provides that a petition for review may be granted where an important question of law is at issue and "there is substantial ground for difference of opinion, and an immediate review of the order or decision may materially advance the ultimate termination of the litigation."

**6.** See *Lynden Inc. v. Walker*, 30 P.3d 609, 612 (Alaska 2001) (citing *United Airlines, Inc. v. Good Taste, Inc.*, 982 P.2d 1259, 1262 (Alaska 1999)).

**7.** *Id.*

**8.** See, e.g., *Cook v. Rowland*, 49 P.3d 262, 264 (Alaska 2002); *Wright v. Shorten*, 964 P.2d 441, 443–44 (Alaska 1998).

**9.** *Hazen v. Municipality of Anchorage*, 718 P.2d 456 (Alaska 1986) (intentional interference with the probable expectancies of a potential plaintiff

in a tort claim requires a remedy); see also *Sweet v. Sisters of Providence in Wash.*, 895 P.2d 484, 492 (Alaska 1995).

**10.** *Sweet*, 895 P.2d at 492.

**11.** See *Hazen*, 718 P.2d at 464.

**12.** We include burden-shifting, continuation of trial to allow additional preparation time, and/or awards of fees and costs among traditional discovery sanctions.

**13.** See *Sweet*, 895 P.2d at 492–93.

**14.** *Carter v. Hoblit*, 755 P.2d 1084, 1086 (Alaska 1988); see also *Ben Lomond, Inc. v. Schwartz*, 915 P.2d 632, 634 (Alaska 1996).

**15.** 718 P.2d 456 (Alaska 1986).

en was arrested after a conversation with an undercover police officer in which she allegedly agreed to engage in an act of prostitution.[16] That conversation was recorded.[17] At a hearing shortly after her arrest, the charges against Hazen were dropped.[18] Hazen's attorneys requested that the recording of the conversation be preserved or that Hazen be given a copy of it because she was contemplating a civil suit.[19] Subsequently, Hazen did sue the Municipality of Anchorage and the officers who arrested her, alleging false arrest and malicious prosecution.[20] In her civil case, Hazen requested a copy of the audio recording of the conversation on which her arrest had been based, but the recording had been permanently altered under circumstances that suggested intentional destruction.[21] When she learned the tape had been altered, Hazen amended her complaint to add an independent claim for alteration or destruction of evidence.[22]

The superior court allowed Hazen to pursue a claim for intentional alteration or destruction of evidence by implying a cause of action under the Alaska Constitution for deliberate violations of due process.[23] On appeal, we found a constitutional remedy unnecessary, instead holding that "Hazen has a common-law cause of action in tort for intentional interference with prospective civil action by spo[li]ation of evidence." [24]

Intentional action by one party to interfere with another party's ability to bring a civil cause of action is central to the tort of spoliation.[25] We have consistently held that there must be a remedy in those rare cases where evidence is intentionally destroyed.[26] The intentional concealment of evidence shares a common essential attribute with the tort of spoliation; both actions provide remedies for the purposeful interference with the ability of the injured party to pursue a civil claim.

## 2. The tort of spoliation requires a viable underlying cause of action.

In *Estate of Day v. Willis* we clarified that claims for intentional spoliation are limited to circumstances in which a valid underlying cause of action is prejudiced by the destruction of evidence.[27] As with Dooley's case, there were two court actions involved in *Estate of Day*. The first proceeding was a wrongful death action filed by Day's estate against the State of Alaska and security officers from Anchorage International Airport.[28] The officers initially encountered Day when they investigated cars parked near the airport after hours. The people in the area dispersed when the officers arrived; Day ran into some nearby woods. The security officers left after learning that one of the cars

16. *Id.* at 458.

17. *Id.*

18. *Id.* at 458–59.

19. *Id.* at 459.

20. *Id.*

21. The circumstances in Hazen's case were exceptional. The court's recording of Hazen's dismissal hearing captured a comment from an unidentified voice at the prosecutor's table that said: "[W]ait 'til you hear what is on the tape now." *Id.* at 459.

22. *Id.* at 458–59.

23. *Id.* at 460.

24. *Id.* at 463.

25. *See State v. Carpenter*, 171 P.3d 41, 64 (Alaska 2007) (quoting *Sweet v. Sisters of Providence in Wash.*, 895 P.2d 484, 492 (Alaska 1995)) (to bring an action for spoliation, plaintiff must show that the destruction of evidence occurred with the intent to disrupt an underlying cause of action); *Hibbits v. Sides*, 34 P.3d 327, 330 (Alaska 2001) (tort of spoliation requires showing that third party acted with intent to harm party's ability to pursue civil cause of action).

26. *Hazen*, 718 P.2d at 464; *see also Hibbits*, 34 P.3d at 329 (third-party spoliation must be recognized as a cause of action given the limited availability of discovery sanctions as a remedy in this context); *Nichols v. State Farm Fire & Cas. Co.*, 6 P.3d 300, 303 (Alaska 2000) (a separate tort cause of action will be available where evidence has been intentionally spoliated, even against a party not included in the initial lawsuit); *Sweet*, 895 P.2d at 492 (intentional spoliation, "a tort borne of necessity," is recognized to provide a remedy in situations in which evidence has been intentionally destroyed).

27. 897 P.2d 78, 81 (Alaska 1995).

28. *Id.* at 79.

belonged to Day and that he was wanted on several criminal charges. Shortly thereafter, the security officers saw Day drive out of the area at high speed and gave chase. The chase culminated in Day's fatal car crash, and Day's estate brought a claim for wrongful death. The superior court granted summary judgment to the defendants, ruling that the officers did not have a duty to take Day into protective custody prior to the chase.[29] We affirmed the trial court's dismissal of the wrongful death action, but Day's estate later learned of a witness to the chase whose description of events contradicted the police officers' account.[30] Day's estate filed a second suit against the defendants, this time alleging that they intentionally failed to disclose the identity of the witness during the discovery phase of the wrongful death litigation. The superior court granted summary judgment to the defendants, dismissing the spoliation claim. We affirmed and explained, "[a]n action based on the tort of spoliation is meritless unless it can be shown that a party's underlying cause of action has been prejudiced by the spoliation."[31] Day's estate failed to make out a valid claim for wrongful death because the defendants did not owe a duty to Day; it follows that the failure to disclose a witness to the chase could not have prejudiced the estate because the estate did not have a viable cause of action against the defendants.

Allstate argues that an independent reason for dismissing Dooley's claim at the summary judgment level is that the absence of the Cook note did not prejudice Dooley's underlying negligence claim against Paul. The superior court correctly rejected this as a basis for the summary judgment motion.[32] Whether the Cook note would have made a difference in the *Dooley v. Paul* trial has not been determined. For purposes of the decision entered today, it is only important to observe that Dooley's claim for concealment of the Cook note alleges that a viable underlying cause of action was prejudiced by a defendant's intentional interference with necessary evidence.

### 3. The tort of spoliation requires that evidence be destroyed or concealed until it is naturally destroyed.

*Hazen v. Municipality of Anchorage* concerned the allegation that necessary evidence was intentionally destroyed and irretrievably lost.[33] We have expanded the definition of "destroyed evidence" only once, and only to explain that there is no functional difference between permanently destroying evidence and volitional actions that permit evidence to dissipate or disappear.[34] In *Hibbits v. Sides* we held that there is "no difference between the intentional destruction or alteration of evidence and the intentional concealment of evidence until it is destroyed by natural causes."[35] In either circumstance, the evidence is completely unavailable for use by one party as a result of another party's decision to interfere with his or her civil cause of action.

We agree with the trial court that where one party merely conceals evidence until after the conclusion of trial and the expiration of other remedies available under the civil rules, the evidence is "destroyed as potential evidence" in the sense that it is unavailable for trial or to support a motion filed under Civil Rule 60(b). But we also agree with Allstate that once the previously concealed evidence becomes available, the situation is markedly different from cases in which evidence is completely destroyed and its impact on the underlying proceedings is mere speculation. If evidence becomes available, our strong policy in favor of trying cases on their merits militates in favor of allowing a fact finder to determine whether concealing the

---

**29.** *Id.*

**30.** The officers stated that they slowed down and backed off from the chase prior to the crash. But the previously undisclosed witness reported that the officers did not slow down prior to the crash. *Id.* at 79–80.

**31.** *Id.* at 81.

**32.** The superior court opted not to make any conclusions of law or fact about this argument. We did not grant review on this question.

**33.** 718 P.2d 456 (Alaska 1986).

**34.** *Hibbits v. Sides,* 34 P.3d 327 (Alaska 2001).

**35.** *Id.* at 330.

evidence caused a party to incur actual damages.[36] Intentional spoliation is not the appropriate cause of action when evidence is concealed, but not destroyed, because late-produced evidence—even evidence produced after the entry of judgment—can still be presented to the fact finder for a ruling on the merits. And trials on the merits are most consistent with the truth-seeking function of the court.

## B. Existing Remedies For Delayed Production Of Evidence

■ Allstate argues that Alaska Civil Rule 37 provides adequate sanctions for evidence that is produced late, but while litigation is still pending. We agree. Where evidence is produced late, but before a judgment is entered, Civil Rule 37 grants trial courts broad discretion to fashion remedies for discovery order violations.[37] A court may consider the nature and severity of the violation, the prejudice to the opposing party, and any other factors it deems appropriate.[38] Courts may order sanctions including payment of expenses incurred as a result of late-produced evidence, burden-shifting, or exclusion of pleadings, testimony, or other evidence.[39] In Dooley's case, Watson was sanctioned for the late production of photograph annotations. The court required him to pay $12,200 to Dooley, Dooley was given the opportunity to re-depose Paul, and additional time was allowed to prepare for trial. In short, the trial court's response was appropriately aimed at reinforcing the importance of abiding by the discovery rules, leveling the playing field, insuring that the case could be fairly tried on its merits, and remedying the financial consequences of concealment.

Allstate and Watson argue that Civil Rule 60(b) is also the appropriate remedy for the late production of the Cook note, but their argument is unconvincing. Civil Rule 60(b) allows for relief from final judgment under several circumstances, including those in which evidence is newly-discovered and/or where there has been fraud or misconduct by an adverse party. But Civil Rule 60(b) would likely provide no relief at all for Dooley. Motions under Civil Rule 60(b)(2) and (3) must be filed within one year of notice of the entry of judgment.[40] A motion filed by Dooley under Civil Rule 60(b) would be time-barred even though Dooley cannot be accused of failing to respond promptly; the existence of the Cook note was not revealed to him until more than a year after entry of the judgment in *Dooley v. Paul*.[41]

## C. Fraudulent Concealment Of Evidence Is The Appropriate Cause Of Action When Evidence Is Withheld But Not Destroyed.

■ Spoliation offers a remedy if evidence is completely inaccessible and calculation of compensatory damages is merely speculative. Dooley's situation is fundamentally different because the Cook note is available and a reasonable estimate of damages caused by the delayed production of it, if any, can be undertaken by a fact finder. Moreover, the alleged harm in this situation is different than that in instances of spoliation. In spoliation cases a party causes the complete destruction of evidence and denies another party the right to have the evidence considered on its merits. A party who intentionally withholds disclosable evidence for a prolonged period of time, in contrast, fraudulent-

---

**36.** In contrast, when destroyed evidence is permanently unavailable for trial, the impact the missing evidence would have had on the outcome of the case, if any, is wholly speculative. *State v. Carpenter*, 171 P.3d 41, 66–67 (Alaska 2007). For this reason, we have explained that punitive damages are available in spoliation claims, even where a plaintiff cannot prove compensatory damages, because the absence of evidence can make it impossible to prove compensatory damages. *Id.*

**37.** *Sowinski v. Walker*, 198 P.3d 1134, 1158 (Alaska 2008).

**38.** *Id.*; Alaska R. Civ. P. 37(b).

**39.** Alaska R. Civ. P. 37(b)(2).

**40.** "The motion shall be made within a reasonable time, and … not more than one year after the date of notice of the judgment …." Alaska R. Civ. P. 60(b).

**41.** Final judgment in *Dooley v. Paul* was entered on November 11, 2005. It appears that as of January 7, 2008, when the superior court denied Allstate's first summary judgment motion, the Cook note was still unknown.

ly delays another party's access to such evidence in violation of an existing duty to disclose.[42]

We have recognized that a cause of action for fraud can arise by silence or non-disclosure in the context of an existing fiduciary duty.[43] In *Carter v. Hoblit*, we stated that a cause of action for fraud may be alleged in cases of "silence or non-disclosure when a fiduciary relationship exists between parties" or, in the absence of such a duty, if the party makes statements that are "half truths, or true remarks which omit material information."[44] Numerous other jurisdictions specifically recognize "fraudulent concealment" as a type of fraud applicable when information is intentionally withheld.[45] This cause of action is a better fit for the harm Dooley alleges, and we recognize fraudulent concealment of evidence as an independent cause of action available in Alaska in limited circumstances.

■ The elements we adopt for the tort of fraudulent concealment of evidence are: (1) the defendant concealed evidence material to plaintiff's cause of action; (2) plaintiff's underlying cause of action was viable; (3) the evidence could not reasonably have been procured from another source; (4) the evidence

was withheld with the intent to disrupt or prevent litigation; (5) the withholding caused damage to the plaintiff from having to rely on an incomplete evidentiary record; and, (6) the withheld evidence was discovered at a time when the plaintiff lacked another available remedy. We note that the elements we adopt provide for a cause of action with a much narrower scope and application than the broader tort of fraudulent concealment recognized in other jurisdictions. We now highlight the most important distinctions between the cause of action we adopt here and the similar cause of action as it has been adopted in other jurisdictions in order to avoid confusion about the scope of the remedy we recognize in this decision.

**1. In Alaska, a claim for fraudulent concealment of evidence is only available when no other remedy is available.**

■ In contrast to claims for fraudulent concealment in other jurisdictions, a cause of action for fraudulent concealment of evidence may be maintained in Alaska only when a plaintiff lacks another sufficient remedy.[46] This is consistent with our view that most discovery violations can be appropriately addressed with our existing civil rules.[47] We

---

**42.** Alaska Civil Rule 26(a) sets out the affirmative duty of litigants to disclose all relevant evidence in a civil action without awaiting a discovery request.

**43.** *Carter v. Hoblit,* 755 P.2d 1084, 1086 (Alaska 1988); *see also Henash v. Ipalook,* 985 P.2d 442 (Alaska 1999); *Ben Lomond, Inc. v. Schwartz,* 915 P.2d 632, 634 (Alaska 1996).

**44.** *Carter,* 755 P.2d at 1086; *see also Ben Lomond, Inc.,* 915 P.2d at 634 (holding "a fiduciary duty allows a finding of fraud even where the fraud is committed by silence or non-disclosure, while the absence of a fiduciary duty precludes a finding of fraud unless the offender makes remarks which are either half true or which omit material information.").

**45.** Fraudulent concealment is recognized as a cause of action in numerous jurisdictions across the United States. *See, e.g., Taylor v. Am. Chemistry Council,* 576 F.3d 16 (1st Cir.2009); *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 291–92 (2d Cir.2006); *Caperton v. A.T. Massey Coal Co., Inc.,* 225 W.Va. 128, 690 S.E.2d 322 (2009); *Picher v. Roman Catholic Bishop of Portland,* 974 A.2d 286 (Me.2009). Dooley draws our attention specifically to the state of New Jersey where fraudulent

concealment is both broadly available as a cause of action and specifically applicable to situations in which evidence has been concealed. The elements of fraudulent concealment in New Jersey, as applied to concealed evidence, are: (1) the defendant had a "legal obligation to disclose evidence in connection with existing or pending litigation," (2) the concealed evidence "was material to the litigation," (3) the evidence could not "reasonably" have been procured from another source, (4) the defendant withheld or concealed the evidence "with purpose to disrupt the litigation," and (5) "plaintiff was damaged in the underlying action by having to rely on an evidential record that did not contain the evidence defendant concealed." *Rosenblit v. Zimmerman,* 166 N.J. 391, 766 A.2d 749, 758 (2001).

**46.** *See, e.g., Rosenblit,* 766 A.2d at 758 (the same plaintiff may bring an independent tort suit for fraudulent concealment and also recover through discovery sanctions).

**47.** Civil Rules 37 and 60(b) will often provide the exclusive remedies for late-produced discovery in Alaska. But we note that existing remedies for the concealment of evidence are not limited to those provided in the civil rules. For example,

intend the tort of fraudulent concealment of evidence to be available only when evidence is concealed until after judgment is entered and the time for seeking relief from judgment under Civil Rule 60(b) has expired.[48]

## 2. Fraudulent concealment of evidence is not limited to pending litigation.

In New Jersey, a cause of action for fraudulent concealment of evidence may be maintained only "in connection with existing or pending litigation."[49] If adopted, this element would bar litigants in Dooley's situation from obtaining relief because final judgment has been entered in Dooley's underlying cause of action and the time for seeking relief from judgment has expired. We believe the existing civil rules in Alaska provide adequate remedies for situations in which evidence becomes available while litigation is still pending or before the expiration of the time for seeking relief from judgment under Civil Rule 60(b). Thus, we do not recognize an independent cause of action for late-produced evidence in circumstances when Civil

Rules 37 and 60(b) provide redress; a claim for fraudulent concealment of evidence in Alaska may not be filed in conjunction with pending litigation.

## 3. Fraudulent concealment of evidence is not a general cause of action available when information is intentionally withheld.

Some jurisdictions permit claims for fraudulent concealment in multiple circumstances involving intentionally withheld information.[50] For example, as fraudulent concealment is defined in New Jersey, the elements have encompassed claims against a seller in a real estate transaction,[51] against a car dealership regarding the sale of an automobile,[52] and against a tenant who misrepresented the status of his insurance.[53] In Alaska, the tort of fraud has not expanded in the same manner;[54] we do not intend to so expand this cause of action now. Instead, we affirm our previous decisions recognizing that a cause of action for fraud may exist when information is withheld in spite of a duty to disclose it.

when concealed evidence prevents a litigant from discovering a cause of action, our existing case law allows for the tolling of the statute of limitations under the "discovery rule." *See Williams v. Williams*, 129 P.3d 428, 432 (Alaska 2006); *Law Offices of Steven D. Smith, P.C. v. Borg–Warner Sec. Corp.*, 993 P.2d 436, 446 (Alaska 1999).

48. The dissent argues that a "case within a case" trial may not provide a satisfactory remedy for evidence that was concealed because various factors may prevent the aggrieved party from recreating the original trial for a fact finder. We agree this approach entails the risks associated with the passage of time: memories fade, witnesses die, and other evidence may be lost or destroyed. These risks are a disadvantage of the "case-within-a-case" approach, but we believe the advantages of the approach outweigh its drawbacks. Most notably, today's approach avoids the wholly speculative assessment of how destroyed evidence might have affected the original trial. The availability of the no-longer-concealed evidence substantially reduces the difficulty of determining how the evidence would have affected the original trial. In contrast, the remedy proposed by the dissent would allow an independent claim based upon newly discovered evidence without regard to whether it would have made a difference to the original action. We already engage in merit-based "case-within-a-case" trials in other contexts. *See e.g., Shaw v. State, Dep't of Admin.*, 861 P.2d 566, 573 (Alaska 1993) ("In order to prove he would have been

found innocent at trial on the original charges, Shaw, as most civil malpractice plaintiffs, will have to present a 'trial within a trial.' "). Extending the process to instances of fraudulent concealment of evidence is similarly appropriate.

49. *Rosenblit*, 766 A.2d at 758.

50. *See, e.g., Taylor v. Am. Chemistry Council*, 576 F.3d 16 (1st Cir.2009) 2009; *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291–92 (2d Cir.2006); *Caperton v. A.T. Massey Coal Co.*, 225 W.Va. 128, 690 S.E.2d 322 (2009); *Picher v. Roman Catholic Bishop of Portland*, 974 A.2d 286 (Me.2009).

51. *State, Dep't of Envir. Protection v. Ventron Corp.*, 94 N.J. 473, 468 A.2d 150 (1983).

52. *Ghaleb v. King Motors, Inc.*, 2008 WL 4763313 (N.J.Super.App.Div.2008).

53. *Boston Market Corp. v. Hack*, 2007 WL 2349989 (N.J.Super.App.Div.2007).

54. *Cf. Ben Lomond, Inc. v. Schwartz*, 915 P.2d 632, 634 (Alaska 1996) (holding that withholding information may only constitute fraud in the presence of a fiduciary relationship); *Carter v. Hoblit*, 755 P.2d 1084, 1086 (Alaska 1988) (holding that fraud can be established by nondisclosure when a fiduciary relationship exists between the parties).

Our existing discovery rules impose a duty to disclose relevant evidence; a violation ·of this duty is the foundation for the tort of fraudulent concealment of evidence.

## V. CONCLUSION

We VACATE the superior court's order denying Allstate's motion for partial summary judgment and REMAND for further proceedings consistent with this decision.

WINFREE, Justice, concurring in part and dissenting in part.

I reluctantly agree with the court's recognition of the fraudulent concealment of evidence tort. Alaska already stands in the very small minority of states recognizing intentional spoliation of evidence as a tort, and the policy justifications for the new tort do not seem to clearly outweigh the policy concerns against it. Nonetheless, I am persuaded that if Alaska is to maintain its recognition of the intentional spoliation tort, it would be inconsistent to deny recognition of the fraudulent concealment tort. But I do not see how the remedies can substantively differ between this new tort and the spoliation tort

recognized in *Hazen v. Municipality of Anchorage*.[1]

The 1986 *Hazen* decision included a sua sponte recognition of the "new tort" of "intentional interference with prospective civil action by spo[li]ation of evidence."[2] Although *Hazen* involved both first-party and third-party spoliation,[3] the decision's primary basis was *Smith v. Superior Court*, where the California Court of Appeal allowed an accident victim to sue a car dealer who had destroyed or lost important vehicle parts necessary for the victim's products liability lawsuit.[4] But the California Supreme Court subsequently refused to recognize the tort for either first-party spoliation cases[5] or third-party spoliation cases.[6] And in the nearly 25 years after *Hazen* the "new tort" has gained little traction in other jurisdictions.[7]

*Hazen* is hardly a solid foundation for the creation of yet another tort. But *Hazen* is the law of Alaska, there has been no request to reconsider and overrule it, and there is no persuasive distinction between *Hazen*'s spoliation tort and the fraudulent conduct tort recognized today. I therefore reluctantly

1.  718 P.2d 456 (Alaska 1986).

2.  *Id.* at 463 (recognizing "new tort" of intentional interference with prospective civil action by spoliation of evidence although issue was not raised by the parties and "was neither briefed nor discussed at oral argument").

3.  *Hibbits v. Sides*, 34 P.3d 327, 329 (Alaska 2001), clarified that *Hazen* involved both first-party and third-party spoliation claims.

4.  *Hazen*, 718 P.2d at 463–64 (discussing *Smith v. Superior Court*, 151 Cal.App.3d 491, 198 Cal. Rptr. 829, 831–32, 836–37 (1984)).

5.  *Cedars–Sinai Med. Ctr. v. Superior Court*, 18 Cal.4th 1, 74 Cal.Rptr.2d 248, 954 P.2d 511, 514–21 (1998). In *Cedars–Sinai* the court acknowledged the policy concerns arising from the intentional destruction of evidence. *Id.* at 515. But weighing against recognizing the new tort were (1) "the dangers of creating new torts to remedy litigation-related misconduct"; (2) the extensive and effective nontort remedies available to address spoliation; (3) the elusive certainty of harm in spoliation cases impeding the jury's ability to evaluate the evidence and accurately compensate a party; and (4) the costs associated with creating a spoliation tort remedy. *Id.* at 515–21. Expressly "part[ing] company"

with *Smith v. Superior Court*, the court declined to recognize a tort "for the intentional destruction or suppression of evidence by a party to the underlying litigation." *Id.* at 513, 519 n. 3, 521.

The nontort remedies noted by the California Supreme Court are available in Alaska. *See Sweet v. Sisters of Providence in Wash.*, 895 P.2d 484, 492 (Alaska 1995) (finding on the facts of that case no need to recognize tort of negligent destruction of healthcare records in light of available remedy of burden-shifting); Alaska R. Civ. P. 37 (allowing discovery abuse sanctions); Alaska R. Prof. Conduct 3.4(a)-(b) (establishing disciplinary rule prohibiting unlawful destruction or concealment of evidence); AS 11.56.610 (establishing class "C" felony for "tampering with physical evidence," including destroying, mutilating, altering, concealing, or removing that evidence "in an official proceeding").

6.  *Temple Cmty. Hosp. v. Superior Court*, 20 Cal.4th 464, 84 Cal.Rptr.2d 852, 976 P.2d 223, 225 (1999) (expanding *Cedars–Sinai* to spoliation caused by non-party).

7.  *See Timber Tech Eng'd Bldg. Prods. v. The Home Ins. Co.*, 118 Nev. 630, 55 P.3d 952, 954 (2002) ("[T]he vast majority of jurisdictions have never recognized tort remedies for spoliation of evidence.").

concur with the court's recognition of this new tort.

Paradoxically, although I only reluctantly agree with the creation of the new fraudulent concealment tort, I strongly disagree with the court's limitation on its remedy through an unpersuasive distinction between the two torts—the tortious conduct is the same, the effect of the tortious conduct is the same, and the remedy for the tortious conduct should be the same.

It has been suggested, but never squarely held, that proof of compensatory damages might not be a necessary element of the spoliation tort and that punitive damages might be awardable even in the absence of compensatory damages.[8] For the new tort the court concludes that unlike the complete destruction of evidence and its unavailability for trial, "mere concealment" of evidence beyond the time the victimized party can do anything about it in the underlying litigation does not really create uncertainty whether the absence of the evidence caused the victim any actual harm—the victim simply must go to the expense of a second trial and prove that the first trial would have had a quantifiably different conclusion. I disagree.

First, if a victim can prove the five non-damages elements of the new fraudulent concealment tort established by the court,[9] the victim already has established both (1) the right to receive the compensatory litigation-costs damages noted in *Hazen*[10] and (2) the obvious basis for "retribution and deterrence" noted in *State v. Carpenter.*[11] The court's narrow focus on whether the victim can prove that the underlying trial would have been quantifiably different ignores the harm unquestionably caused by the fraudulent concealment of evidence—the added expense to the victim and the affront to our system of justice from intentional disruption of the underlying litigation.

Second, the court's assurance that a second trial with the newly found evidence will provide the victim with a "trial on the merits" of the original claim is not adequate. In this case the facts are seductive because of the close proximity in time between the first trial and the discovery of the concealed evidence, making it seem logical that an adequate remedy would be a case-within-a-case trial giving the victim an opportunity to prove the original trial would have been different had the evidence been available. But extend the timeline and that logic loses luster. What if critical concealed evidence is discovered two, five, or ten years later, but by that time previously existing evidence is no longer available to put on the case-within-a-case trial? Witnesses die; memories fade; documents are lost or destroyed; and other physical evidence perishes. The victim might have the critical, but previously concealed, evidence but might no longer have the ability to put on the case-within-a-case trial because other evidence no longer exists.

I find it fundamentally unfair, and inconsistent with the *Hazen* line of cases, that the court would place such an extraordinary burden of proof and persuasion on the victim in these circumstances. If the court is going to

---

8. *Hazen*, 718 P.2d at 464 n. 10 (noting that because Hazen might prove compensatory damages in the form of extra expense in litigating underlying claims without the destroyed evidence on remand, there was no need to address the issue of punitive damages in the absence of compensatory damages); *State v. Carpenter*, 171 P.3d 41, 66–67 (Alaska 2007) (affirming punitive damages award accompanying compensatory damages award for destroyed evidence (but not for underlying tort claim), and noting *Hazen's* contemplation that punitive damages might be awardable even in the absence of a compensatory damages award and that "punitive damages may sometimes be the *only* appropriate damages recoverable for spoliation, especially when the jury finds no liability for the underlying claims" (emphasis in original)).

9. The five non-damages elements adopted for the fraudulent concealment of evidence tort are: (1) the defendant concealed evidence material to the plaintiff's cause of action; (2) the plaintiff's underlying cause of action was viable; (3) the evidence could not reasonably have been procured from another source; (4) the evidence was withheld with the intent to disrupt or prevent litigation; and (5) the withheld evidence was discovered at a time when the plaintiff lacked another available remedy.

10. 718 P.2d at 464 n. 10.

11. 171 P.3d at 67.

create the new tort, it should not create a remedial framework different from *Hazen*.

For the foregoing reasons, I concur in part and dissent in part.